RENDERED: SEPTEMBER 27, 2018
TO BE PUBLISHED

# Supreme Court of Kentucky



2017-SC-000602-DG

DATE 10/18/18 Kim Redmon, DC

COMMONWEALTH OF KENTUCKY            APPELLANT

ON REVIEW FROM COURT OF APPEALS
V.           CASE NO. 2016-CA-000709
KENTON CIRCUIT COURT NO. 14-CR-00088

TERRANCE ARMSTRONG            APPELLEE

## OPINION OF THE COURT BY CHIEF JUSTICE MINTON

### REVERSING AND REMANDING

We accepted discretionary review of this criminal case to determine whether a witness's status as a parolee is admissible on cross-examination as impeachment pursuant to Kentucky Rule of Evidence (KRE) 611 despite the provision of KRE 609(b) that would render as presumptively too remote in time evidence of the more than thirty-year-old conviction upon which the witness's parole was based. We hold that even though evidence of a conviction may be prohibited to allow a general attack on the witness's credibility under KRE 609(b), evidence of the witness's lifetime parole status stemming from the conviction may still be admissible to allow a more specific attack on the witness's credibility by showing bias or motive to lie under the broader scope of

KRE 611. That said, we further hold that the trial court's error was harmless beyond a reasonable doubt, and therefore reverse the Court of Appeals and reinstate the trial court's judgment.

## I.     FACTS AND PROCEDURAL HISTORY.

The police responded to a call reporting an assault with injuries and found Harry Stewart lying in the road, unconscious and severely injured. Stewart was transported to a hospital where he was ultimately diagnosed with a fractured jaw, a swollen and lacerated tongue, and swelling of the face. Stewart spent about a month in a coma and remained hospitalized for several months following the incident. He is no longer able to work or care for himself.

After interviewing bystanders, police identified and arrested Terrence Armstrong for assaulting Stewart. The grand jury indicted Armstrong for second-degree assault, but the charges were later amended to first-degree assault. At trial, Armstrong admitted to the elements of assault by admitting to punching Stewart but disputed virtually every detail leading up to the assault. The jury found Armstrong guilty of assault in the fourth-degree, a misdemeanor.

The defense put forth a self-defense theory, and Armstrong testified in his own defense that he and his two friends, all of whom were African-American, were headed to their friend Spencer's apartment when the incident began. Armstrong testified that on their walk, the friends stopped to pet a dog, but he continued to Spencer's apartment. After no one answered the door, Armstrong waited outside on the curb, listening to music. He testified that he

2

noticed a few men standing beside him, and one of them said "get the fuck out of here, nigger, before we stab you up." He explained that the men approached him, and that one of them had a knife. He "punched at the same time, with no pause, one hand and then the other" at the one closest to him, and the man fell to the ground. The two other men backed up, spread out, and pulled out knives. Armstrong testified that they continued to say things like "I'm going to fuck you up" and "get out of here."

The Commonwealth's key eyewitness, John Flynn, gave a different account of the events leading to the assault. Flynn testified that he grew up with Harry's brother, Richard Stewart, and that he had driven to Richard Stewart's apartment building—where Harry Stewart also lived—to go with Richard Stewart to a nearby shelter for supper. After supper, Flynn and Richard returned to the apartment building, and Harry came outside. Flynn testified that three men were talking outside of the apartment building when "a black fella and a woman" showed up. He said the man—Terrance Armstrong—then approached the three men and said, "we got a problem." Flynn testified that Richard Spencer backed up, reached into his front pocket, and said "I'll cut your fucking heart out," but that Richard did not actually pull out a knife. Flynn testified that Armstrong hit Harry in the face, causing Harry to fall to the ground, and, when Armstrong got back up, hit Harry in the face with a full pop can by throwing it at him. According to Flynn, Armstrong then hit Harry in the face again, causing him to fall to the ground, and struck Harry with at least 15

more kicks and punches. Flynn himself denied having a knife or threatening anyone with a knife during the incident.

During cross-examination of Flynn, defense counsel sought to impeach Flynn's credibility by asking him "Are you on parole for life for murdering a black man?" The Commonwealth objected and, after hearing arguments and reviewing case law, the trial court allowed the defense to ask whether Flynn was a convicted felon but held that KRE 609 disallowed any questions about the details of the crime or whether Flynn was on lifetime parole. The trial court admonished the jury regarding the defense counsel's question.

On avowal, Flynn testified that, in 1983, he and three others had robbed two black victims and stabbed one of them to death. He testified that he was sentenced to life imprisonment and was currently out on lifetime parole. He admitted that threatening someone with a knife or possessing a knife would be a violation of his parole and would likely send him back to prison.

The jury convicted Armstrong of fourth-degree assault and fixed punishment at twelve months' confinement and a $500 fine. On appeal of the resulting judgment to the Court of Appeals, Armstrong argued that the trial court erred in refusing to allow defense counsel to cross-examine Flynn about his lifetime parole status because that testimony was permissible evidence of Flynn's motive to lie about having threatened Armstrong with a knife. The Court of Appeals agreed, holding that evidence of Flynn's lifetime parole status was admissible under KRE 611, and that excluding such evidence amounted to a Confrontation Clause violation and an abuse of discretion. Accordingly, the

4

Court of Appeals reversed the judgment. The Commonwealth sought discretionary review, which we granted.[1]

## II. ANALYSIS.

The issue before this Court is whether the trial court violated Armstrong's Sixth and Fourteenth Amendment rights when it limited the scope of his cross-examination of Flynn. Armstrong argues both that he should have been permitted to ask Flynn whether he was on lifetime parole because his parole status would have provided a motive to testify in a manner helpful to the Commonwealth, and that it would have provided a motive to lie about threatening Armstrong with a knife or possessing a knife at the time of the incident.

To determine whether Armstrong's constitutional rights have been violated, it is first necessary to give guidance on an issue that has caused some confusion in the courts below: whether a witness's lifetime parole status is admissible for impeachment purposes under KRE 611, despite evidence of the underlying crime itself being presumptively inadmissible as too remote in time under KRE 609(b).

---

[1] In its brief, the Commonwealth focuses on the argument that the trial court properly excluded both evidence that Flynn was on lifetime parole and the details of the underlying crime giving rise to the parole—specifically, that Flynn had pleaded guilty to murdering an African American male in 1983. Worth noting is that the issue of whether the details of the underlying crime were admissible at trial is not before this Court because that argument was waived by Armstrong in his brief to the Court of Appeals. Further, the Court of Appeals explicitly declined to consider the issue in its opinion, from which the Commonwealth appealed. Accordingly, this Court addresses only the issue concerning the admissibility of Flynn's lifetime parole status.

### a. Evidence of Flynn's lifetime parole status is admissible for impeachment purposes under KRE 611, despite KRE 609 rendering details of the underlying crime inadmissible.

KRE 611(b) defines the general scope of cross-examination. Under that rule, "a witness may be cross-examined on any matter relevant to any issue in the case, including credibility."[2] Therefore, KRE 611(b) embodies the "wide open" rule of cross-examination, "permitting the inquiry on cross to extend to the full limits of the dispute . . . unaffected by the content of the direct testimony of the witness under cross-examination."[3]

Even without the broad scope of KRE 611, it is undisputed that the cross-examiner is allowed to discredit the witness's testimony "subject always to the broad discretion of a trial judge to preclude repetitive and unduly harassing interrogation."[4] Two important methods by which the impeaching party may discredit a witness's testimony on cross-examination are by introducing the fact that the witness has a prior felony conviction and by "revealing possible biases, prejudices, or ulterior motives of the witness as they may relate to issues . . . in the case at hand."[5]

By introducing evidence of a prior felony conviction, "the cross-examiner intends to afford the jury a basis to infer that the witness's character is such that he would be less likely than the average trustworthy citizen to be truthful

---

[2] KRE 611(b).

[3] Lawson, The Kentucky Evidence Law Handbook § 3.20[2][c] (5th ed. 2013).

[4] *Davis v. Alaska*, 415 U.S. 308 (1974).

[5] *Id.*

in his testimony."[6] This type of evidence provides a general attack on the witness's credibility.[7] KRE 609 governs the use of criminal convictions to impeach the credibility of a witness. Under that rule, a criminal conviction can be used to impeach only if the crime underlying the conviction "was punishable by death or imprisonment for one . . . year or more"[8] and the conviction is not more than ten years old, unless the court determines the probative value of the conviction substantially outweighs its prejudicial effect.[9] Even still, the nature of the felony underlying the conviction cannot be disclosed unless the witness denies having been convicted.[10]

While no specific provision of the Kentucky Rules of Evidence provide for impeachment of a witness by bias, prejudice, or ulterior motives,[11] we have always recognized that impeachment is permissible on cross-examination.[12]

---

[6] *Id.*

[7] *Id.*

[8] KRE 609(a).

[9] KRE 609(b) ("Evidence of a conviction under this rule is not admissible if a period of more than ten (10) years has elapsed since the date of the conviction unless the court determines that the probative value of the conviction substantially outweighs its prejudicial effect.").

[10] KRE 609(a) ("The identity of the crime upon which conviction was based may not be disclosed upon cross-examination unless the witness has denied the existence of the conviction.").

[11] There is, likewise, no specific provision in the Federal Rules of Evidence. Lawson, The Kentucky Evidence Law Handbook § 4.10[2][a] (5th ed. 2013).

[12] *See Baker v. Kammerer*, 187 S.W.3d 292, 295 (Ky. 2006) (stating that "exposing the bias of an opposing witness" is "one of the most crucial goals of cross-examination").

Exposing a witness's bias or motivation to testify is "a proper and important function of the constitutionally protected right of cross-examination."[13]

In this case, the trial court prohibited Armstrong from asking a key prosecution witness whether he was currently on lifetime parole, finding that such evidence was inadmissible under KRE 609's prohibition of evidence of criminal convictions more than ten years old.[14] While KRE 609 undoubtedly bars for impeachment purposes evidence of the underlying crime itself—in this case, a murder conviction from 1983—we have previously held that the fact that a witness's credibility may not be impeached by proof of a prior conviction does not deny the defendant the right to show potential bias of a witness that a juror might infer from the fact that the witness was on parole for that conviction.[15] As argued in this case, evidence that a witness is on parole may, in some cases, support an inference that the witness was biased. In these cases, bias may result either because the witness's parole status creates a relationship with the prosecution that motivates that witness to testify in a

[13] *Davis*, 415 U.S. at 316.

[14] There is no suggestion in the trial record that the trial court was asked, or undertook on its own, a consideration of whether probativeness of the 1983 conviction substantially outweighed the possibility of prejudice.

[15] In *Adcock v. Commonwealth*, 702 S.W.2d 440, 441 (Ky. 1986), the trial court determined that evidence of a witness's parole status stemming from an inadmissible criminal conviction was also inadmissible for impeachment purposes, as such evidence "would accomplish indirectly what could not be accomplished directly." *Id.* But in reversing the trial court's ruling, this court explained that the fact that the witness could not be impeached by evidence of a certain crime was "not a sufficient reason to deny a defendant the right to show potential bias of a witness which a juror might infer from the fact that the witness was on parole under active supervision." *Id.*

manner favorable to the prosecution, or because it creates a penal interest in the subject matter of the testimony on the part of the witness.[16]

Put more succinctly, while evidence of a conviction may be prohibited to launch a general attack on the witness's credibility under KRE 609, evidence of the witness's parole status stemming from the conviction may still be admissible as a more specific attack on the witness's credibility by showing bias or motive to lie under the broader scope of KRE 611.

Thus, while the trial court may not have abused its discretion in excluding for impeachment purposes evidence of Flynn's 1983 murder conviction under KRE 609—as that crime was more than ten years old—it incorrectly determined that evidence of Flynn's lifetime parole status was also barred by that rule. Instead, Flynn's lifetime parole status could have been admitted as a more specific attack on his credibility—namely, to show potential bias of Flynn that a juror might infer from the fact that he was on lifetime parole. While the trial court could ultimately have barred defense counsel from asking Flynn about his lifetime parole status under its broad discretion to limit cross-examination under KRE 611, the point is that KRE 609 does not automatically bar such evidence.

---

[16] *See* Lawson, The Kentucky Evidence Law Handbook § 4.10[2][a] n. 3 (5th ed. 2013) ("There are two broad categories of bias. First, a relationship between a witness and one of the parties may be evidence of bias. The relationship may be a favorable one . . . or it may be a hostile relationship . . . . Second, a relationship between a witness and the litigation also may be evidence of bias—such as a financial interest in the case at bar, or in a related case.") (quoting Paul C. Gianneli, Understanding Evidence 271–72 (3d ed. 2009)).

9

### b. The trial court abused its discretion by prohibiting Armstrong from cross-examining a key witness about his motive or bias.

Armstrong alleges that the trial court abused its discretion when it prohibited him from cross-examining Flynn about his status as a lifetime parolee and the potential revocation of his parole if he were to testify that he threatened or possessed a knife at the time of the incident. Armstrong contends that this examination would allow an inference that Flynn was motivated to testify in a manner that would curry favor from the Commonwealth and an inference that Flynn was motivated to lie about threatening or possessing a knife during the incident. Armstrong argues that this prohibition violated his Sixth Amendment right to confront witnesses against him.

"An essential aspect of the Sixth Amendment Confrontation Clause is the right to cross-examine witnesses," and "the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination."[17] Accordingly, the Sixth Amendment right to confrontation must be analyzed whenever the accused is prohibited from cross-examining a witness about his motive or bias.

---

[17] *Davenport v. Commonwealth*, 177 S.W.3d 763, 767 (Ky. 2005). This Court has recognized that a showing of bias can be particularly important in cross-examination because, unlike other forms of impeachment "which might indicate that the witness is lying[,] evidence of bias suggests *why* the witness might be lying." *Star v. Commonwealth*, 313 S.W.3d 30, 38 (Ky. 2010) (quoting *Stephens v. Hall*, 294 F.3d 210, 224 (1st Cir. 2002)) (emphasis in original).

10

However, "the right to cross-examination is not absolute and the trial court retains the discretion to set limitations on the scope and subject."[18] "The Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish."[19] Instead, trial courts retain "wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant."[20]

"Therefore, a limitation placed on the cross-examination of an adverse witness does not automatically require reversal."[21] Instead, "a reviewing court must first determine if the Confrontation Clause has been violated."[22] The Sixth Amendment "does not prevent[] a trial judge from imposing any limits on defense counsel's inquiry into the potential bias of a prosecution witness."[23] Rather, "[s]o long as a reasonably complete picture of the witness' veracity, bias and motivation is developed, the judge enjoys power and discretion to set appropriate boundaries."[24]

---

[18] *Id.* at 767–78.

[19] *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986) (emphasis in original).

[20] *Id.*

[21] *Davenport*, 177 S.W.3d at 768.

[22] *Id.*

[23] *Van Arsdall*, 475 U.S. at 679.

[24] *Commonwealth v. Maddox*, 955 S.W.2d 718, 721 (Ky. 1997).

11

To state a violation of the Confrontation Clause, the defendant must show that "he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, and 'thereby to expose to the jury the facts from which jurors . . . could appropriately draw inferences relating to the reliability of the witness.'"[25] A defendant has satisfied this burden if "[a] reasonable jury might have received a significantly different impression of [the witness's] credibility had [the defense's] counsel been permitted to pursue his proposed line of cross-examination."[26]

Reviewing courts have found this burden to be met "when the excluded evidence clearly supports an inference that the witness was biased, and when the potential for bias exceeds mere speculation."[27] A violation does not occur where the excluded evidence supports an inference of bias based on mere speculation.[28] In *Davenport v. Commonwealth*, for example, the appellant challenged the trial court's refusal to allow defense counsel to ask a prosecution witness on cross-examination about his probationary status in an adjacent county, as well as his pending misdemeanor charges in the venue county.[29] The appellant argued that the proposed line of cross-examination

---

[25] *Van Arsdall,* 475 U.S. at 680 (quoting *Davis,* 415 U.S. at 318).

[26] *Van Arsdall,* 475 U.S. at 680.

[27] *Davenport,* 177 S.W.3d at 769.

[28] *See id.* at 771.

[29] *Id.* at 767.

would have established "the possibility that the witness may have cooperated with [police] in anticipation of leniency regarding his probation" and to "establish that an even greater potential for bias existed where [the witness] was facing two misdemeanor charges . . . at the time of trial."[30] The appellant claimed that the exclusion of that testimony violated his Sixth Amendment right to cross-examine the prosecution's witnesses.[31]

In upholding the trial court's limitation on the appellant's cross-examination, this Court explained that "[w]hile a witness's pending charges or probationary status alone may, in some cases, be a satisfactory basis upon which to infer bias, the facts in evidence here were simply insufficient to support the inference of [the witness's] bias."[32] "Other than the plain fact of [the witness's] probationary status, defense counsel offered no evidence whatsoever to support the claim that he was motivated to testify in order to curry favor with authorities."[33] Importantly, this Court noted that the witness lacked an implicit motivation to divert suspicion away from himself by cooperating with police, as no attempt was made to implicate him in the crime and he was never identified as a potential perpetrator.[34] Further, the witness's testimony was corroborated in nearly every material aspect. Therefore, this

---

[30] *Id.*

[31] *Id.*

[32] *Id.* at 771.

[33] *Id.*

[34] *Id.*

Court stated, an inference that the witness was biased based solely on his probationary status would be "purely speculative."[35]

Here, as Flynn testified on avowal, he was not only on lifetime parole at the time of the incident and trial, but he acknowledged that possessing or threatening Armstrong with a knife—a fact alleged by Armstrong and which formed a part of his self-defense theory—would result in revocation of his parole status. Further, Flynn's account of the incident was not corroborated by any other witness, as he was the Commonwealth's only witness to provide testimony about the facts leading up to the assault, and his testimony conflicted with that of the defense. Therefore, unlike the witness at issue in *Davenport*, Flynn's testimony was not only uncorroborated, but he possessed an implicit motivation to provide testimony that he was not an aggressor during the incident.

Accordingly, our determination is that Armstrong met the burden for stating a Confrontation Clause violation. Flynn's avowal testimony would not merely provide a speculative inference that he was motivated to testify to curry favor from the Commonwealth. Instead, the jury could have reasonably inferred from the avowal testimony that Flynn was motivated to avoid revocation of his parole status, and a return to prison, by providing testimony that he neither threatened Armstrong nor possessed a knife at the time of the incident. These facts would support an inference of bias that exceeds mere speculation, and

---

[35] *Id.*

14

without them being available for the jury to consider, we cannot say that "a reasonably complete picture of the witness' veracity, bias and motivation" was developed.

"In Kentucky, the trial court's rulings concerning limits on cross-examination are reviewed for abuse of discretion."[36] "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles."[37] Because the trial court's refusal to allow Armstrong's counsel to ask Flynn about his lifetime parole status violated Armstrong's Sixth Amendment right to confront this witness, we are persuaded that the trial court abused its discretion.

**C. The trial court's error was harmless beyond a reasonable doubt.**

A trial court's improper denial of the defendant's opportunity to impeach a witness for bias is subject to harmless error analysis.[38] Because the error is of constitutional significance, "[t]he correct inquiry is whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt."[39] Therefore, the error is harmless beyond a reasonable doubt if there is

---

[36] *Id.*

[37] *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999).

[38] *Star v. Commonwealth*, 313 S.W.3d 30, 38 (Ky. 2010) (quoting *Van Arsdall*, 475 U.S. at 684).

[39] *Star v. Commonwealth*, 313 S.W.3d 30, 38 (Ky. 2010) (quoting *Van Arsdall*, 475 U.S. at 684).

15

no "reasonable possibility that exclusion of the evidence complained of might have contributed to the conviction."[40]

We are persuaded that this standard has been met. At trial, jurors heard uncontradicted testimony from Flynn that at least one of the three men involved in the incident—Richard Stewart—threatened Armstrong with a knife, said "I will cut your fucking heart out," and reached into his pocket just before Armstrong assaulted Stewart. Armstrong himself testified that not until after the assault did he believe a second knife—presumably Flynn's—was pulled out. They also heard testimony from the defendant and two other defense witnesses to the effect that Harry Stewart, Richard Stewart, and John Flynn were the initial aggressors in the incident.

Faced with this testimony, the jury rejected Armstrong's self-defense theory and found him guilty of assault in the fourth-degree. Had the trial court admitted evidence that Flynn was on lifetime parole, the jury could have inferred Flynn had a motive to lie about not threatening Armstrong with a knife and about himself, Richard Stewart, and Harry Stewart not being the initial aggressors.

Even if the jury had outright rejected Flynn's version of events based on any inferred bias, we cannot say that a reasonable possibility exists that the jury would have found either that Armstrong did not assault Harry Stewart—given that he admitted the elements of assault during his own testimony—or

---

[40] *Talbott v. Commonwealth*, 968 S.W.2d 76, 84 (Ky. 1998) (quoting *Chapman v. California*, 386 U.S. 18, 23 (1967)).

16

that he acted in self-defense. In short, we are not convinced the absence of any evidence supporting an inference that Flynn was biased contributed to the guilty verdict reached by the jury. Therefore, we find the trial court's error to be harmless beyond a reasonable doubt.

## III.   CONCLUSION.

Armstrong's Sixth Amendment right to confrontation was violated when his defense counsel was prohibited from asking a key prosecution witness about his parole status on cross-examination. Because we find there is not a reasonable possibility that lack of this evidence might have contributed to the jury's verdict, the error was harmless beyond a reasonable doubt. Accordingly, we reverse the decision of the Court of Appeals and reinstate the trial court's judgment.

All sitting. All concur.


COUNSEL FOR APPELLANT:

Andy Beshear
Attorney General of Kentucky

Leilani K.M. Martin
Assistant Attorney General

COUNSEL FOR APPELLEE:

Kathleen Kallaher Schmidt
Assistant Public Advocate