RENDERED:  NOVEMBER 13, 2020; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-1023-MR

DANIEL GRANT PRICE                                                      APPELLANT

v.

APPEAL FROM FAYETTE CIRCUIT COURT
HONORABLE JOHN E. REYNOLDS, JUDGE
ACTION NO. 17-CR-01373

COMMONWEALTH OF KENTUCKY                                          APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CLAYTON, CHIEF JUDGE; DIXON AND JONES, JUDGES.

DIXON, JUDGE:  Daniel Grant Price appeals his Fayette Circuit Court conviction of possession of a handgun by a convicted felon.[1]  After careful review of the briefs, record, and the law, we affirm.

---

[1]  Kentucky Revised Statutes (KRS) 527.040.

## FACTS AND PROCEDURAL BACKGROUND

On October 20, 2017, the Lexington Police Department received a call of shots fired at an apartment complex. Witnesses identified Price as being the shooter and leaving in a blue truck. While officers responded to this call, a second call was received which resulted in police responding to a tobacco store a few blocks away on Broadway. Price was at the Broadway location, and a handgun was recovered from the passenger seat of a blue truck. Price was ultimately arrested after being indicted on charges of being a felon in possession of a handgun and two counts of wanton endangerment. The Commonwealth opted to proceed solely on the handgun charge. At trial, the Commonwealth presented witness testimony from four residents of the apartment complex, five law enforcement employees, and a clerk of the Fayette Circuit Court.

Tracey Burt, a resident, testified that she heard gunshots, and when she looked around a wall, saw Price shooting up the stairs, at what she did not know. She then saw Price get into a blue truck owned by another resident of the building known to Burt only as "Mr. P." Burt indicated she did not know Price personally, but knew that his mother lived in the complex. Burt recognized Price from seeing him at the complex, and knew he went by the nickname "Dirty." When she heard the shots, Burt testified her main concern was the welfare of her sister and niece who lived in the building behind where Price was shooting.

Crystal Johnson, also a resident of the apartment complex, testified she knew Price because he used to live across from her. She, too, heard the shots on October 20, 2017, but did not see who fired them. Johnson denied telling police that she had seen "Dirty" fire a handgun. Officer Padgett, who responded to the apartment complex, refuted this testimony, stating Johnson gave a statement identifying Price by this nickname.

John Smith[2] stated he knew Price because Price used to date his mother. Smith testified he saw Price holding a gun and leaving in a blue truck.

Portland Pringle, a twenty-year resident of the apartment complex, testified he knew Price from when he lived there and from being a member of the community. On October 20th, Pringle was about to leave the apartment complex when he heard something. Price, who appeared to be intoxicated and was armed with a gun, let himself into Pringle's blue truck. Pringle testified that Price briefly pointed the gun at him, but then stowed it underneath the seat of the truck. Pringle then drove to the tobacco store on Broadway. When police responded to the second call, Pringle consented to a search of his truck, and a handgun was recovered from under the passenger seat. Pringle denied ownership of the gun.

---

[2] Because the witness was a minor when these events occurred, a pseudonym is being used to protect his privacy.

Officers testified that the gun, as well as two .40 caliber shell casings recovered from the apartment complex, contained no fingerprints. They also testified that Price was not a known owner of the gun.[3] Fayette County Supervising Deputy Clerk Stephanie Ball testified that Price was convicted in Fayette Circuit Court, Case No. 08-CR-00017, of felony possession of a controlled substance in the first degree.

At the end of the Commonwealth's case, Price moved for a directed verdict, though he offered no basis in support thereof. The Commonwealth opposed, and the trial court denied the motion.

Price was the only witness in his defense. He admitted being a felon and that he was at the apartment complex on October 20, 2017, where people were throwing fireworks, drinking, and shooting. He denied firing or possessing a gun on that day. Price testified he walked to the tobacco store on Broadway.

At the end of the testimony, Price again made a summary motion for directed verdict, which the court denied. The jury returned a verdict of guilt and recommended a sentence of six years. On May 21, 2019, the trial court entered its final judgment/sentence of imprisonment in accordance with the jury's recommendation, and this appeal followed.

---

[3] As a matter of course, gun tracing allows law enforcement to locate an initial purchaser (in this case, the Detroit Police Department); however, official records are not kept for secondary market transactions.

# ANALYSIS

Price argues the trial court erred by: (1) denying his motion for a directed verdict; (2) granting the Commonwealth's motion *in limine* to exclude testimony regarding any prior acts of violence or threats involving Price and his ex-girlfriend or her son; and (3) allowing testimony regarding Price's prior conviction for possession of a controlled substance in the first degree during the guilt phase of the trial. We will address each argument in turn and will introduce additional facts as necessary.

## DIRECTED VERDICT MOTION

KRS 527.040(1) provides, "A person is guilty of possession of a firearm by a convicted felon when he possesses, manufactures, or transports a firearm when he has been convicted of a felony[.]" Price argues the Commonwealth failed to establish that he ever possessed a firearm and, therefore, the trial court erred in denying his motions for directed verdict. We disagree.

As an initial point, Price asserts this claim was preserved by defense counsel's oral motion at the end of the Commonwealth's case and the renewed motion at the close of trial. The Commonwealth argues the claim was not preserved, noting that defense counsel offered no basis in support of the motions.

Should this Court hold that the claim is not preserved, Price has alternatively requested palpable error review pursuant to RCr[4] 10.26.

CR[5] 50.01 states, in pertinent part, "[a] motion for a directed verdict shall state the specific grounds therefor." Kentucky courts have applied CR 50.01 to criminal cases and have held that its requirement of "specific grounds" must be followed to preserve for appellate review the denial of a motion for directed verdict of acquittal. *Pate v. Commonwealth*, 134 S.W.3d 593, 597-98 (Ky. 2004); *Daniel v. Commonwealth*, 905 S.W.2d 76, 79 (Ky. 1995). *See also Hicks v. Commonwealth*, 805 S.W.2d 144, 148 (Ky. App. 1990).

Herein, at the close of the Commonwealth's case, defense counsel merely stated, "Motion for directed verdict. That's it." At the close of evidence, defense counsel again said, "Motion for directed verdict." Counsel's token attempt at making the motion is nearly indistinguishable from the conduct deemed inadequate for preservation in *Pate*. 134 S.W.3d at 597. Accordingly, this claim is not preserved, and we will review it only for a palpable error that affected Price's substantial rights and resulted in manifest injustice. RCr 10.26.

Upon review of the record, we have determined Price has failed to demonstrate that the trial court committed a palpable error in denying his motion

---

[4] Kentucky Rules of Criminal Procedure.

[5] Kentucky Rules of Civil Procedure.

for directed verdict.  The Commonwealth presented three witnesses, each of whom testified they saw Price with actual possession of a firearm.  Additionally, one witness, Pringle, linked the recovered handgun to Price.  Price asserts the Commonwealth's witnesses were unreliable; however, in a motion for directed verdict, trial courts must assume the evidence for the Commonwealth is true and reserve the issue of credibility and weight for the jury.  *Commonwealth v. Benham*, 816 S.W.2d 186, 187 (Ky. 1991).  Because the Commonwealth provided evidence to support the possession requirement of the charge, this claim fails.

## MOTION *IN LIMINE*

As noted above, Price was also indicted on two counts of wanton endangerment.  These charges arose from Price allegedly discharging the firearm near Coleman, his ex-girlfriend, and Smith, Coleman's son.  The Commonwealth opted not to proceed on these charges and, prior to trial, moved generally to exclude testimony regarding prior acts of violence and threats between Price and Coleman and Smith.  Additionally, the Commonwealth sought specifically to exclude testimony that, on the same night, Smith followed Price to the store on Broadway and attacked him with a bat resulting in Smith being charged in juvenile court.

In its motion *in limine*, the Commonwealth argued this line of testimony was irrelevant to the lone charge of possession of a handgun by a

convicted felon. Price opposed the motion, asserting the testimony was admissible under KRE[6] 611 and *Davis v. Alaska*[7] as it went toward Smith's credibility and motive to lie. The trial court granted the motion *in limine*.

On appeal, Price argues the testimony of Coleman regarding her strained relationship with Price, as well as the testimony of Smith about their fight that night, was essential in showing that Smith had a motive to lie about Price having a gun. Thus, Price asserts the trial court abused its discretion and violated his constitutional rights to due process, a fair trial, and to call and confront witnesses. U.S. CONST. amend. V, VI, XIV; KY. CONST. §§ 2, 11. The Commonwealth asserts the trial court did not err as the contested testimony was not relevant to the charge of felon in possession of a handgun.

Both parties agree this claim was preserved. The standard of review on evidentiary issues is abuse of discretion. *Clark v. Commonwealth*, 223 S.W.3d 90, 95 (Ky. 2007). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999).

---

[6] Kentucky Rules of Evidence.

[7] Counsel did not include a citation, but it is the assumption of this Court that counsel was referring to 415 U.S. 308, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974).

As an initial point, Price has characterized the trial court's ruling as having precluded him from calling Coleman as a witness. This is inaccurate. The parties were merely constrained from eliciting testimony regarding prior acts of violence or threats, not from calling specific witnesses. Indeed, at trial, defense counsel was asked more than once if she intended to call Coleman as a witness, yet Coleman did not testify in these proceedings. Accordingly, the sole issue before this Court is whether Price was wrongfully precluded from eliciting testimony regarding his tumultuous relationship with Coleman and Smith's assault of him to establish a motive or bias for Smith's testimony.

Price correctly asserts the Sixth Amendment Confrontation Clause goes beyond merely allowing cross-examination as to the elements of the charge. "[T]he exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination. Accordingly, the Sixth Amendment right to confrontation must be analyzed whenever the accused is prohibited from cross-examining a witness about his motive or bias." *Commonwealth v. Armstrong*, 556 S.W.3d 595, 602 (Ky. 2018) (citations omitted); *see also Beaty v. Commonwealth*, 125 S.W.3d 196, 206 (Ky. 2003) ("[T]he Confrontation Clause is only implicated if the excluded cross-examination concerns a matter giving the witness reason to testify falsely during the trial at

hand, *e.g.*, when the witness bears some animus toward, or is biased against, the defendant.").

To assert a violation of the Confrontation Clause, Price must show that: (1) he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness from which the jury could draw inferences relating to the reliability of the witness; and (2) "[a] reasonable jury might have received a significantly different impression of [the witness's] credibility" had Price's counsel been permitted to pursue the proposed line of cross-examination. *Armstrong*, 556 S.W.3d at 602-03. A violation does not occur where the excluded evidence supports an inference of bias based on mere speculation. *Id.* at 603.

The Supreme Court of Kentucky has held that a trial court abuses its discretion in prohibiting testimony regarding a history of hostility between a witness's family and the defendant's family as it is relevant evidence to establish the witness's motive in testifying. *Barrett v. Commonwealth*, 608 S.W.2d 374, 276 (Ky. 1980). Herein, the excluded testimony of a history of threats and violence among Smith, his family, and Price is similar in nature to that in *Barrett* and demonstrates more than a mere speculation of Smith's animus towards Price. As it is conceivable that this testimony could provide a bias or motive for Smith to

-10-

testify falsely, the excluded testimony is relevant evidence, and Price has met the first criterion to establish a violation.

Further, as Smith's credibility went unchallenged at trial, the Court cannot say that the introduction of evidence of a strong animus against Price would not have left a reasonable jury with a significantly different impression of his credibility. Thus, Price has met the second criteria, and we are persuaded the trial court abused its discretion in excluding the relevant testimony.

Nevertheless, reversal is not required where the error is harmless beyond a reasonable doubt. *Armstrong*, 556 S.W.3d at 604. An error is harmless where there is no reasonable possibility the exclusion of the evidence might have contributed to the conviction. Herein, two other witnesses, unrelated to Coleman or Smith, testified they saw Price with a handgun. Pringle, the witness who drove Price to Broadway, actually had an up-close and prolonged view of both Price and the handgun. The only evidence offered in opposition was Price's denial. Therefore, even if the jury outright rejected Smith's testimony as the product of bias, we cannot say that a reasonable possibility exists that the jury would have found Price not guilty.

## PRIOR CONVICTION

Price argues he was denied due process and a fair trial when the trial court permitted the Commonwealth to introduce testimony that he was previously

convicted of possession of a controlled substance in the first degree. Price relies on the holdings of *Old Chief v. United States*, 519 U.S. 172, 117 S. Ct. 644, 136 L. Ed. 2d 574 (1997), and *Dickerson v. Commonwealth*, 174 S.W.3d 451 (Ky. 2005), that a court errs in denying a defendant's stipulation to their status as a felon. The Commonwealth disagrees because Price neither requested a stipulation nor entered an admission.

The parties agree this claim is not preserved. Accordingly, we will review it only for a palpable error that affected Price's substantial rights and resulted in manifest injustice. RCr 10.26.

The Supreme Court of Kentucky held in *Anderson v. Commonwealth*, 281 S.W.3d 761, 765-66 (Ky. 2009), that *upon request* of the defendant, a stipulation or admission, as appropriate, to the status as a felon should be permitted. However, the Commonwealth is correct in stating the record does not indicate that Price requested a stipulation or admitted to having a prior felony. Consequently, the Commonwealth was required to offer proof of the prior felony conviction as a necessary element to prove the crime charged. Accordingly, the trial court did not err, and this claim fails.

## CONCLUSION

Therefore, and for the foregoing reasons, the final judgment/sentence of imprisonment of the Fayette Circuit Court is AFFIRMED.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Robert C. Yang
Kayla D. Deatherage
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Leilani K. M. Martin
Assistant Attorney General
Frankfort, Kentucky