RENDERED:  JUNE 2, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0017-MR

DARION DIETRICH                                                                 APPELLANT


v.
APPEAL FROM KENTON CIRCUIT COURT
HONORABLE KATHLEEN LAPE, JUDGE
ACTION NO. 20-CR-00520


COMMONWEALTH OF KENTUCKY                                         APPELLEE


OPINION
AFFIRMING IN PART AND
VACATING IN PART

** ** ** ** **

BEFORE:  CETRULO, DIXON, AND EASTON, JUDGES.

DIXON, JUDGE:  Darion Dietrich appeals his conviction of assault in the first

degree entered by the Kenton Circuit Court on December 22, 2021.  Having

reviewed the briefs, record, and law, we affirm the conviction but vacate the

portion of the judgment imposing public defender fees.

**BACKGROUND FACTS AND PROCEDURAL HISTORY**

In 2020, Dietrich was residing with Renee,[1] his paramour; Henry, her infant son; Kim, her mother; and Trey, her brother. On February 28, 2020, Dietrich volunteered to watch Henry, who was then ten months old, while Renee and Kim went out and Trey was not at home. It is undisputed that before Renee and Kim left the house, Henry was happy, healthy, and alert with no known significant injuries. Approximately 20 minutes later, Dietrich, frantic and distraught, called Renee stating that Henry had fallen off the bed and was injured.

Renee called 911, and emergency services were at the house within minutes. The paramedic observed Henry lying on the living room floor; he was pale, unconscious, unresponsive, and vomiting, with a lump on the back of his head and a fixed pupil – indicative of severe head trauma. Henry was stabilized and, due to the severity of his injuries, was transported to the local hospital that provided the highest level of care for children. There, Henry underwent emergency surgery to treat a large right-sided subdural hemorrhage.

Dr. Makroff, a specialist in child abuse pediatrics, consulted on Henry's care. She characterized the hematoma as acute and very severe. Henry had additional injuries, including: a large, complex fracture at the base of his skull

---

[1] For the privacy of the child victim, we have elected to use first names only when referring to him or his family.

which was most likely caused by a direct impact; retinal hemorrhages that were consistent with abusive head trauma, though possibly caused by surgery; a fracture to his thoracic vertebra that was unlikely to have been caused by the same injury as the skull fracture; and some bruising that could not be dated. No healing or prior injuries were indicated in Henry's skeletal scan.

Dr. Makroff opined that – even factoring in the height of the bed, the possibility Henry hit the bedframe, and the thickness and nature of the flooring – the degree of Henry's skull fracture was far outside that which one might expect from a fall. Additionally, a fall would not be expected to result in retinal hemorrhages and was not the right mechanism to cause the vertebral fracture. Finally, Dr. Makroff asserted that vomiting, seizures, blown pupils, or a lack of brain response can set in immediately after the type of injury Henry sustained, and she would not expect hours or days to elapse without these signs or symptoms presenting.

Dietrich consistently denied injuring or abusing Henry. He maintained that Henry had been in their bedroom happily eating and that he changed Henry's diaper and then left him on the bed while he went to the kitchen. When he returned a minute later, he found Henry on the floor, called Renee, and then moved Henry to the living room. Later that day, Dietrich sent Renee text messages stating that if they took him to jail he deserved it and that he could never

make this right. Dietrich explained that these statements were in reference to his leaving Henry unattended on the bed.

After a three-day jury trial, Dietrich was acquitted on the charge of criminal abuse first degree, but found guilty of assault in the first degree.[2] He was sentenced to 15 years on December 22, 2021, and this appeal timely followed. Additional facts will be introduced as they become relevant.

## LEGAL ANALYSIS

### I.      The Court did not Abuse its Discretion by Admitting Evidence.

Dietrich first complains that the trial court erred by admitting, over his objection, irrelevant and prejudicial evidence. We review a trial court's decision regarding the admission of evidence for an abuse of discretion. *Clark v. Commonwealth*, 223 S.W.3d 90, 95 (Ky. 2007). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or

---

[2] Kentucky Revised Statutes (KRS) 508.010.

> (1) A person is guilty of assault in the first degree when:
>
>> (a) He intentionally causes serious physical injury to another person by means of a deadly weapon or a dangerous instrument; or
>>
>> (b) Under circumstances manifesting extreme indifference to the value of human life he wantonly engages in conduct which creates a grave risk of death to another and thereby causes serious physical injury to another person.

unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999). We will address each challenged item of evidence in turn.

## Testimony of Prior Violence

During its re-direct examination of Renee, the Commonwealth inquired if Dietrich had ever been violent with her. Renee responded that on more than one occasion Dietrich had choked her, pushed her, and called her names. She also recounted one argument in their bedroom that culminated in Dietrich pushing her, her shoving him back, and then him choking her on the bed until she "saw stars." In admitting the evidence, the trial court accepted the Commonwealth's argument that Dietrich had opened the door by eliciting testimony regarding his character for nonviolence and by asking about specific instances of nonviolence against Henry, as well as his three biological children.

In *Stansbury v. Commonwealth*, 454 S.W.3d 293, 300 (Ky. 2015), the Supreme Court of Kentucky summarized the applicable law as follows:

> Generally, "[C]haracter can be proven only by evidence of general reputation or by opinion, not by specific instances of conduct." *Tamme v. Commonwealth*, 973 S.W.2d 13, 29 (Ky. 1998); KRE[3] 405. Moreover, KRE 404(a) holds that "[e]vidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion." KRE 404.

---

[3] Kentucky Rules of Evidence.

However, "[W]hen one party introduces improper evidence, such 'opens the door' for the other party to introduce improper evidence in rebuttal whose only claim to admission is that it explains or rebuts the prior inadmissible evidence." *Metcalf v. Commonwealth*, 158 S.W.3d 740, 746 (Ky. 2005) *citing Norris v. Commonwealth*, 89 S.W.3d 411, 414 (Ky. 2002).

On appeal, Dietrich asserts that his general demeanor and whether he ever disciplined Henry were facts in direct controversy; therefore, the introduction of this type of evidence by defense counsel was proper and did not justify the court's decision. This argument is without merit.

At trial, the Commonwealth's evidence highlighted that Henry was perfectly normal in the 24 hours prior to being left in Dietrich's care, at which time he succumbed to a severe brain injury that, per uncontroverted medical evidence, was both inconsistent with Dietrich's claim of a fall and unlikely to go hours or days without presenting demonstrable signs or symptoms. Thus, plainly, neither Dietrich's personal character nor his past actions were relevant to their theory of the case, and there is no contention they correlate an element of the charged offenses.

Indeed, prior to the testimony at issue, all evidence on these matters was introduced by defense counsel on cross-examination. This was consistent with counsel's opening statement that "the Commonwealth is going to try and make you believe that for no reason whatsoever, [Dietrich] has the most uncharacteristic

snap, for no reason, and heinously abuses Henry. [T]he evidence is going to show that that makes zero sense." While a defendant must be permitted to present a complete and meaningful defense, *Brown v. Commonwealth*, 313 S.W.3d 577, 624 (Ky. 2010), a claim of necessity does not shield the defense's admission of improper evidence from opening the door to rebuttal.

Here, Dietrich elicited from Kim that he was generally a laid-back person, that he would go out of his way to be nice when Renee was grouchy, that he was never frustrated with his biological children and was attentive to their needs, that he appropriately disciplined the children with timeouts, and that he never hit the children. From Renee, Dietrich introduced her prior statements to police, social workers, and himself wherein she asserted that Dietrich had watched Henry multiple times, this was the first time anything bad had happened, and if Dietrich was going to do "some mean ass act," he would have done it before this incident. She also stated that she would not let someone who was violent with children watch Henry and that Dietrich never had a temper with Henry and was always great with him.

Consisting largely of specific incidents of conduct, this evidence, which was offered solely to prove Dietrich could not have injured Henry because he was a nonviolent person, is inadmissible pursuant to KRE 405(c). As the Supreme Court emphasized in *Stansbury*, once Dietrich "opened the door to the

introduction of 'good' character evidence, he cannot complain if the Commonwealth walked through that door and introduced character evidence not to his liking." 454 S.W.3d at 301. Consequently, the court did not err in admitting the Commonwealth's rebuttal evidence that Dietrich was violent.

We note Dietrich's suggestion that his "opening of the door" was for the trait of violence only with respect to children. KRE 404(a)(1) speaks of a "pertinent trait of character." Counsel has not cited to this Court any Kentucky case authority which would authorize such a specification within the trait of violence. Even if such a specification were permissible, when we consider the totality of the testimony elicited by Dietrich, the trial court did not abuse its discretion by allowing the questions about violence toward an adult in this case. *See, e.g.*, *State v. Harvey*, 129 P.3d 1276, 1281-82 (Id. App. 2006) (although defendant offered character testimony only with respect to his behavior around children, prosecution could offer evidence of domestic abuse against adults).

**Testimony Regarding Dietrich's Letter**

Closely related is Dietrich's claim that the court erred in admitting testimony concerning a letter he wrote to Renee while he was incarcerated. This testimony was again elicited during the Commonwealth's re-direct of Renee and introduced the following statements made by Dietrich: "I'm afraid you are gonna leave me again"; "I told you point blank anyone you try to leave me for is gonna

get beat the fuck up lol your ass is mine and mine alone"; "The only way you getting away is to kill my ass"; "I'm a 6'4" 210 pound monster with a lot of guns and I'm willing to die for what's mine"; and "You stuck, the only way out now is in a toe tag and a body bag." Concluding that our above analysis is equally applicable to these facts, we find no error.

**Body Camera Footage of Arrest**

Lastly, with regard to his claims of improperly admitted evidence, Dietrich challenges the introduction of body camera footage showing his arrest, arguing it was neither relevant to the charges nor probative of his guilt and was substantially prejudicial. Disagreeing, the Commonwealth maintains that the video, which shows Dietrich's initially successful concealment from police executing a warrant for his arrest, was admissible as circumstantial evidence of guilt.

The Commonwealth is correct that, "[a]s a general rule, proof of flight to elude capture or prevent discovery is admissible[.]" *Day v. Commonwealth*, 361 S.W.3d 299, 303 (Ky. 2012); *see also Jackson v. Commonwealth*, 199 S.W.3d 763 (Ky. 2006). As the Court explained in *Rodriguez v. Commonwealth*, 107 S.W.3d 215, 219 (Ky. 2003), evidence of flight is relevant "because it has a tendency to make the existence of the defendant's guilt more probable: a guilty person probably would act like a guilty person." *See also* KRE 401. Because we

-9-

conceive no practical difference between a defendant attempting to elude capture by fleeing versus actively concealing himself, we reject Dietrich's claim the evidence was not relevant. And, though relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of undue prejudice," and we agree an arrest is inherently prejudicial, we cannot say the court abused its discretion under the facts of this case. KRE 403.

## II. The Court did not Abuse its Discretion by Limiting the Defense's Cross-Examination.

Dietrich next argues the court violated his right to present a defense. At issue is Kim's avowal testimony recounting an occurrence three months before Henry's hospitalization when he was crying at 5:00 a.m. and she beat on Renee's door five times before Renee, who was either drunk or hungover, answered. Dietrich contends this event in conjunction with Henry's bruises and his removal from her custody would have established for the jury a pattern of parental neglect and, thereby, demonstrated her motivation to lie about Dietrich to avoid prosecution herself. Thus, he asserts the court violated his federal and state constitutional rights to confront or meet the witnesses against him, as well as his right to cross-examine them on any relevant matter, when it prohibited the admission of this testimony.

The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be

confronted with the witnesses against him[.]"[4] The right to cross-examine witnesses and thereby expose their bias or motivation to testify is a proper and important function of this right. *Commonwealth v. Armstrong*, 556 S.W.3d 595, 600-02 (Ky. 2018). Additionally, under Kentucky law, "[a] witness may be cross-examined on any matter relevant to any issue in the case, including credibility." KRE 611(b). We review a trial court's rulings concerning limits on cross-examination for an abuse of discretion. *Armstrong*, 556 S.W.3d at 604.

Though we are not wholly convinced that the prohibited testimony was relevant, we agree with the Commonwealth that, regardless, reversal is not merited. In *Armstrong*, the Court announced the following standard for establishing a violation of the Confrontation Clause:

> [T]he defendant must show that "he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, and 'thereby to expose to the jury the facts from which jurors . . . could appropriately draw inferences relating to the reliability of the witness.'" A defendant has satisfied this burden if "[a] reasonable jury might have received a significantly different impression of [the witness's] credibility had [the defense's] counsel been permitted to pursue his proposed line of cross-examination."

556 S.W.3d at 602-03 (alterations in original) (footnotes omitted).

---

[4] Similarly, Section 11 of the Kentucky Constitution guarantees a criminal defendant the right "to meet the witnesses face to face[.]"

Here, significant evidence was introduced regarding Renee's motivation, including her admission that she would choose Henry over Dietrich and that she felt pressured by the social workers to blame Dietrich in order to regain custody of Henry. Additionally, defense counsel vigorously examined her regarding prior statements that, inconsistent with her trial testimony, were wholly supportive of Dietrich, his care of Henry, and his nonviolent nature. Given this wealth of evidence and the limited value of the avowal testimony, we do not believe a reasonable jury would have a significantly different impression of Renee's credibility but for the court's prohibition of the evidence. Accordingly, we find no error.

### III. The Order Imposing Public Defender Fees must be Vacated.

Finally, Dietrich maintains the court committed clear error when, despite finding he was a "poor person" under KRS 453.190(2), it imposed a $2,000 public defender fee. The Commonwealth concedes the fee is in error pursuant to *Miller v. Commonwealth*, 391 S.W.3d 857 (Ky. 2013). In *Miller*, the Kentucky Supreme Court held that "because Appellant was found to be a poor person, the partial public defender fee was improperly assessed under KRS 31.211(1), and the imposition of that fee must . . . be vacated." *Id.* at 871. Applying *Miller*, we agree the $2,000 fee imposed against Dietrich must likewise be vacated.

-12-

**CONCLUSION**

Therefore, and for the foregoing reasons, we AFFIRM Dietrich's conviction but VACATE the imposition of a public defender fee.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Kayla D. Deatherage
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Thomas A. Van De Rostyne
Assistant Attorney General
Frankfort, Kentucky