RENDERED:  MAY 2, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-1232-MR

DARRIN ROSE                                                             APPELLANT

v.

APPEAL FROM BOYD CIRCUIT COURT
HONORABLE JOHN F. VINCENT, JUDGE
ACTION NO. 22-CR-00202

COMMONWEALTH OF KENTUCKY                                    APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  THOMPSON, CHIEF JUDGE; ACREE AND CALDWELL, JUDGES.

ACREE, JUDGE:  Appellant, Darrin Rose, was convicted on multiple counts of possession of a matter portraying a sexual performance by a minor.  We affirm.

## BACKGROUND

In May 2022, Georgetown detective Blake Lizer downloaded several images from a specific IP address during a BitTorrent investigation.  At least one of the images met the criteria for a visual depiction of a sexual performance by a

minor under Kentucky Revised Statutes (KRS) 531.335. Upon discovering the IP address identified a device located in Catlettsburg and therefore outside his jurisdiction, Detective Lizer forwarded the information to the Ashland Police Department.

The Ashland Police Department continued the investigation and found the IP address to be associated with the residence of Rose and his wife, Stephanie. Law enforcement then executed a search warrant on the residence and seized several electronic devices.

Among the devices seized was a cell phone found on top of the medicine cabinet in the bathroom, which Rose admitted was his. Several file names on the cell phone were indicative of child pornography and a visual review of the phone's media folder showed "a large amount" of child pornography. (Video Record (VR) 7/10/23 at 2:58:50, 3:00:00).

A jury convicted Rose on 14 counts of possession of matter portraying a sexual performance by a minor (under 12 years old) and recommended a concurrent sentence of ten years' imprisonment. He was sentenced consistent with the jury's recommendation. This appeal follows.

## ANALYSIS

Rose raises three issues on appeal: first, the trial court erred in failing to declare a mistrial; second, it was improper and prejudicial for the

Commonwealth to refer to "child pornography" as "child sexual abuse material" at trial; and third, describing the subject cell phone as a "secret" or "hidden" phone was prejudicial. We will address each in turn.

## I. The trial court did not err in overruling Rose's motion for mistrial.

Rose argues the trial court erred in denying his motion for a mistrial after it determined Stephanie did not violate the separation-of-witnesses order. A trial court's decision to deny a motion for a mistrial is reviewed for an abuse of discretion, which occurs only when "the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999); *see also Wright v. Commonwealth*, 590 S.W.3d 255, 260 (Ky. 2019) (Trial courts have broad discretion over whether to grant a motion for a mistrial.)

During cross-examination, the Commonwealth asked Stephanie about a conversation she had with Rose after the first day of trial. Specifically, the prosecutor asked whether Stephanie had discussed with Rose any potential witnesses in the case:

> Commonwealth: Now, as of yesterday, you heard the judge's instructions that, as a witness, you were ordered to be sequestered, right?
>
> Stephanie: I was ordered to be what?
>
> Commonwealth: Sequestered. Not to discuss the case with anyone, things of that nature.

Stephanie:          Yes.

Commonwealth: Did you have any conversations with your husband after court yesterday?

Stephanie:          We had talked, yes.

Commonwealth: Did you discuss the case with your husband after court yesterday?

Stephanie:          No.  We didn't discuss the case, no.

Commonwealth: You discussed potential witnesses in this case though, right?

Stephanie:          Not that I know of.

Commonwealth: You discussed potential witnesses that the Commonwealth was intending to call, correct?

Stephanie:          I may have mentioned that I had seen Tommy.

Commonwealth: Who's Tommy?

Stephanie:          Tommy Bocook is a friend of ours.

Commonwealth: And he's been subpoenaed by the Commonwealth, right?

Stephanie:          I'm assuming.

Commonwealth: And you shared that information with your husband last night, right?

(VR 7/11/23 at 9:15:34-9:16:45).  At this point, defense counsel asked to approach

the bench.  The bench conference transpired as follows:

Defense Counsel:  We object to this line of questioning.  There's a matter of privilege.  Conversations between

husband and wife are privileged.  Apparently, they've been listening in on the phone calls from the jail.  But it's still marital privilege.  We object to this whole line of questioning.

Trial Judge:  All phone calls to and from the jail are recorded as a matter of course.  The problem is that she's a witness and she's talking about what's going on in the trial.  That's improper.  I'm going to hold a contempt hearing for her and send her to jail.  That's what I'm going to do – after we're outside the scope of the jury, of course, but she's going to jail.

(VR 7/11/23 at 9:16:54-9:17:37).  The trial judge continued on to say that he would be holding a contempt hearing, and at that point, defense counsel "could raise [the marital privilege] issue if [he] want[s]" but "it's not a question of whether or not a husband and wife can talk, it's a question of whether a witness at trial can discuss the trial after they've been set outside and separated."  (VR 7/11/23 at 9:18:21-9:18:35).  The trial judge then directed the Commonwealth's attorney to not mention where the conversation between the two took place,[1] and questioning resumed.

---

[1] Previously during the Commonwealth's cross-examination of Stephanie, defense counsel moved for a mistrial because "opposing counsel just told the jury [his] client is incarcerated."  (VR 7/11/23 9:10:25-9:10:35).  Because Stephanie had already testified that Rose is incarcerated, the trial judge overruled the motion.  He directed the Commonwealth to not "go there," and admonished the jury to disregard the previous question and response.

The contempt hearing occurred after the close of evidence on the following day. After watching a video recording of the conversation between Rose and Stephanie, the court determined Stephanie was not in contempt of court.

Defense counsel then moved for a mistrial, arguing the line of questioning hurt Stephanie's credibility by insinuating she broke a rule. The court denied the motion and, in so doing, considered the broad nature of impeachment testimony, the permissibility of proper questions where a good-faith basis exists, and the inapplicability of spousal privilege to the situation at bar. (VR 7/11/23 at 11:33:08-11:33:43). Rose now writes in his brief "[t]here was no other remedy other than to grant a mistrial." (Appellant's Reply Brief at 2). We disagree.

We must first acknowledge the general rule that the presentation of evidence as well as the scope and duration of cross-examination rests in the sound discretion of the trial judge. *Commonwealth v. Maddox*, 955 S.W.2d 718, 721 (Ky. 1997). Under the Kentucky Rules of Evidence (KRE), a cross-examiner may ask about specific instances of conduct if they have "a factual basis for the subject matter of the inquiry." KRE 405(b). "A witness may be cross-examined on any matter relevant to any issue in the case, including credibility." KRE 611(b). While there is no specific provision in the Kentucky Rules of Evidence permitting impeachment for bias, prejudice, or ulterior motives, Kentucky has "always recognized that impeachment is permissible on cross-examination" and

"[e]xposing a witness's bias or motivation to testify is a proper and important function of the constitutionally protected right of cross-examination." *Commonwealth v. Armstrong*, 556 S.W.3d 595, 600 (Ky. 2018) (internal quotation marks and citation omitted). In making its ruling, the trial court relied upon these principles, noting the rules concerning impeachment evidence are broad. (VR 7/11/23 at 11:33:43-11:33:55).

Rose complains the Commonwealth did not have a good-faith basis for asking about the conversation, and instead merely sought to "purposely discredit her testimony." (Appellant's Reply Br. at 1). Rose is mistaken. Because the Commonwealth had a "factual basis for the subject matter of the inquiry" – the video recording from the jail – the Commonwealth was permitted to question Stephanie about her motive and reveal potential bias in favor of getting her husband home, something she testified she wanted. (VR 7/11/23 at 9:19:25). This was sufficient to cross-examine Stephanie about the conversation, and it did not create such a prejudicial effect that could be removed in no other way than the declaration of a mistrial. *Wright*, 590 S.W.3d at 260.

Finally, we note the Commonwealth presented an abundance of additional evidence inculpating Rose. There is no evidence to suggest the jury's decision was impacted by *any* of Stephanie's testimony. The jury was privy to ample evidence upon which they could have reasonably relied to convict Rose.

Therefore, the trial court did not abuse its discretion in denying Rose's motion for a mistrial.

**II.**    **Rose was not prejudiced when the Commonwealth described the videos on Rose's phone as "child sexual abuse material."**

Rose argues that referring to the videos as "child sexual abuse material" instead of "child pornography" throughout the trial was prejudicial. This issue is unpreserved, as Rose concedes. He requests review for palpable error under RCr[2] 10.26.

"In order to demonstrate an error rises to the level of a palpable error, the party claiming palpable error must show a probability of a different result or [an] error so fundamental as to threaten a defendant's entitlement to due process of law." *Allen v. Commonwealth*, 286 S.W.3d 221, 226 (Ky. 2009) (internal quotation marks and citation omitted).

Rose claims because he was charged with only *viewing* matter portraying a sexual performance by a minor, it should have been referred to as "child pornography" during the trial because the term "child sexual abuse material" has a more negative connotation, and, as Rose argues, the latter implies "a child is actively being abused[.]"  (Appellant's Br. at 21).  This, according to Rose, fits our understanding of undue prejudice under KRE 403, which states relevant evidence

---

[2] Kentucky Rules of Criminal Procedure.

"may be excluded if its probative value is substantially outweighed by the danger of undue prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence."

We first note Rose's suggested alternative – "child pornography" – does not appear within the text of KRS 531.335, thus cutting against his argument that "child sexual abuse material" is not appropriate since "[t]he word 'abuse' is never once mentioned in KRS 531.335." (Appellant's Br. at 21). The statute provides, in pertinent part:

> (1) A person is guilty of possession or viewing of matter portraying a sexual performance by a minor when, having knowledge of its content, character, and that the sexual performance is by a minor, he or she:
>
> > (a) Knowingly has in his or her possession or control any matter which visually depicts an actual sexual performance by a minor person or computer-generated image of a minor person; or
> >
> > (b) Intentionally views any matter which visually depicts an actual sexual performance by a minor person or computer-generated image of a minor person.

KRS 531.335. Although the statute is silent on the correct terminology, the United States Department of Justice and various other sources have made clear that "child sexual abuse material" is acceptable terminology.[3]

We do not believe the phrase "child sexual abuse material" is any more inflammatory than "child pornography." Both phrases are likely to have substantially the same impact on jurors. Notably, KRE 403 "does not offer protections against evidence that is merely prejudicial, in the sense of being detrimental to a party's case." *Webb v. Commonwealth*, 387 S.W.3d 319, 328 (Ky. 2012) (internal quotation marks and citation omitted). The Commonwealth may prove its case through "competent evidence of its own choosing, and . . . the defendant may not stipulate away parts of the case that he does not want the jury to see." *Page v. Commonwealth*, 149 S.W.3d 416, 420 (Ky. 2004).

Moreover, in defense counsel's cross-examination of Sergeant Daniels, the following exchange took place:

> Defense Counsel: Torn file fragments were found that show peer-to-peer download activity for CSAM. CSAM means child pornography, correct?
>
> Sergeant Daniels: Yes.

---

[3] *Child Sexual Abuse Material*, DEPARTMENT OF JUSTICE, at 1, https://www.justice.gov/d9/2023-06/child_sexual_abuse_material_2.pdf ("While ['child pornography'] still appears in federal law, 'child sexual abuse material' is preferred, as it better reflects the abuse that is depicted in the images and videos and the resulting trauma to the child.").

-10-

(VR 7/10/23 at 3:50:12-3:50:21). By establishing this definition, defense counsel provided the means for disabusing the jury of any misunderstanding.

Accordingly, we find no palpable error regarding the use of the term "child sexual abuse material" to describe the videos found on Rose's phone.

### III. Rose was not prejudiced when the Commonwealth described Rose's second phone as a "secret" or "hidden" phone.

The final issue raised by Rose is that the Commonwealth's description of the cell phone found in the bathroom as Rose's "secret" or "hidden" phone was unduly prejudicial under KRE 403. This, too, is an unpreserved issue and Rose accordingly requests palpable error review.

Rose directs us to multiple instances throughout the trial where the Commonwealth referred to the cell phone as "secret" or "hidden." Rose argues that such a description is incorrect because his wife knew about the phone, he voluntarily gave police the passcode, and the cell phone was found "in a common, easily accessible area of the home[.]" (Appellant's Br. at 23).

We do not believe any of these facts disprove the ability for the cell phone to have been "hidden" or a "secret" phone, nor do we find that the Commonwealth's description was prejudicial. It can hardly be said that the top of a bathroom medicine cabinet – near the ceiling and outside an individual's regular line of vision – is a "common, easily accessible" place for a phone. While the top of a medicine cabinet may very well be a common place for dust or a spare screw,

-11-

the same cannot be said for a cell phone. We need not speculate on what constitutes a "hidden" or "secret" storage location for a phone; however, it is obvious to the Court that describing a secondary cell phone found on top a bathroom medicine cabinet as "hidden" is not palpable error. Rose cannot assert he was prejudiced by the Commonwealth referring to the phone as "hidden" or "secret" simply because it is a fact adverse to his case. *Webb*, 387 S.W.3d at 326; *Page*, 149 S.W.3d at 420.

Moreover, the Commonwealth directs us to at least three instances in which defense counsel used the same terminology to describe the bathroom phone. (VR 7/10/23 at 3:51:30, 3:55:30, 3:58:30). That counsel qualified the terminology by saying it was how law enforcement referred to the cell phone does not negate that defense counsel himself used the term in front of the jury. Defense counsel could have called it the second cell phone, old cell phone, or the cell phone found in the bathroom instead, but he did not. He responded by calling it "the hidden phone" as well. "A defendant cannot complain on appeal of alleged errors invited or induced by himself, particularly where . . . it is not clear that the defendant was prejudiced thereby." *Gray v. Commonwealth*, 203 S.W.3d 679, 686 (Ky. 2006) (quoting *United States v. Lewis*, 524 F.2d 991, 992 (5th Cir. 1975)). Rose cannot now complain of prejudice when counsel himself did not use the suggested, supposedly less prejudicial, description. Accordingly, we find no palpable error.

## CONCLUSION

Based on the foregoing, the Boyd Circuit Court's judgment is

AFFIRMED.


ALL CONCUR.


BRIEFS FOR APPELLANT:

Kayley Barnes
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Russell Coleman
Attorney General of Kentucky

Kristin L. Conder
Assistant Attorney General
Frankfort, Kentucky